## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA UK LIMITED, IPR PHARMACEUTICALS, INC., and SHIONOGI SEIYAKU KABUSHIKI KAISHA, <br><br> Plaintiffs, <br><br> v. <br><br> AUROBINDO PHARMA LIMITED, and AUROBINDO PHARMA USA, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) )  Case No. 07-CV-06020 (MLC)(JJH) |

---

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY STAY

---

Arnold B. Calmann (abc@saiber.com)
Jane Jhun (jj@saiber.com)
**SAIBER LLC**
One Gateway Center
13th Floor
Newark, NJ 07102-5311
Tel: 973.622.3333
Fax: 973.622.3349

Of Counsel:
Jeffrey S. Ward (jsward@michaelbest.com)
Thomas P. Heneghan (tpheneghan@michaelbest.com)
Edward J. Pardon (ejpardon@michaelbest.com)
**MICHAEL BEST & FRIEDRICH LLP**
One South Pinckney Street
P.O. Box 1806
Madison, WI  53701-1806
Tel: 608.257.3501
Fax: 608.283.2275

Attorneys for Defendants Aurobindo Pharma Limited
and Aurobindo Pharma USA, Inc.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................................................ii

INTRODUCTION ...........................................................................................................1

BACKGROUND..............................................................................................................2

ARGUMENT....................................................................................................................4

POINT I: PLAINTIFFS MISAPPLY THE "FIRST FILED" RULE .......................................4

     A.     Equity Favors Defendants in this Circumstance ...........................................4

     B.     The First-Filed Rule Does Not Apply to Hatch-Waxman Cases.................6

     C.     Plaintiffs' Case Law Does Not Support Them.................................................7

POINT II:   THE CORRECT STANDARD REQUIRES PLAINTIFFS TO PROVE
HARDSHIP OR INEQUITY  AND NO SUCH CIRCUMSTANCES EXIST IN
BEING REQUIRED TO GO FORWARD ..................................................................9

POINT III:  GRANTING A STAY WOULD SUBVERT CONGRESS' EXPRESS
MANDATE TO EXPEDITE HATCH-WAXMAN CASES ...................................11

CONCLUSION.............................................................................................................13

# TABLE OF AUTHORITIES

**Federal Cases**

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, No. 07-0993,
2007 WL 4284877 (E.D. Mich. Dec. 3, 2007) ........................................................................ 8

*Aventis Pharma Deutschland GMBH v. Lupin Ltd.*, 403 F. Supp. 2d 484 (E.D. Va. 2005) ...... 6

*Crosley Corp. v. Hazeltine Corp.*,
122 F.2d 925 (3rd Cir. 1941) ................................................................................................. 4

*Dentsply Int'l., Inc., v. Kerr Mfg. Co.*,
734 F. Supp. 656 (D. Del. 1990) ............................................................................................ 9

*EEOC v. Univ. of Pennsylvania*,
850 F.2d 969 (3rd Cir. 1988) ......................................................................................... 4, 5, 6

*Gold v. Johns-Manville Sales Corp.*,
723 F.2d 1068, 1076 (3rd Cir. 1983) ..................................................................................... 9

*In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991). ......................................................... 11

*Landis v. North American Co.*,
299 U.S. 248 (1936) ................................................................................................................. 9

*PDL Biopharma, Inc. v. Sun Pharmaceutical Industries, Ltd.*, No. 07-11709,
2007 WL 2261286 (E.D. Mich. Aug. 6, 2007) ............................................................. 7, 8, 13

*Schering Corp. v. Caraco Pharm. Labs., Ltd.*, No. 06-24386,
2007 WL 1648908 (E.D. Mich. June 6, 2007) ............................................................... 8, 9, 12

*Teva Pharms. USA, Inc., v. Pfizer, Inc.*,
405 F.3d 990 (Fed. Cir. 2005) ............................................................................................... 8

*Valley Drug Co. v. Geneva Pharms.*,
344 F.3d 1294 (11th Cir. 2003) ............................................................................................. 8

**Federal Statutes**

21 U.S.C. § 355(c)(3)(C) ............................................................................................................ 7

35 U.S.C. § 271(e)(2) ................................................................................................................. 8

**Other Authorities**

Herbert Schwartz, <u>Patent Law and Practice</u> (4th ed. 2003) .................................................. 6

Herbert Schwartz, <u>Patent Law and Practice</u> (5th ed. 2006) .................................................. 6

## INTRODUCTION

Plaintiffs' motion to stay is about delay.  Every additional day that Plaintiffs maintain the monopoly on their "me too" drug Crestor® means additional revenue to them.  This is a Hatch-Waxman case, and the courts have recognized that Congress wants Hatch-Waxman cases expedited in order to facilitate the entry of generic drugs into the marketplace where appropriate.

Plaintiffs apply the wrong standard in arguing that this case should be stayed. Plaintiffs argue that a stay is appropriate simply because they chose to file first in their preferred forum of Delaware, even though they correctly suspected that jurisdiction over Aurobindo Pharma Limited ("Aurobindo India") was lacking there.  While filing a "protective" suit such as this one may be a good strategy for Plaintiffs, it is not a relevant consideration for this Court.  There is no inherent right to file in two places and ask one court where personal jurisdiction is present to wait while you test the jurisdictional waters someplace else.

In contrast to Plaintiffs' assertions, the correct standard for this Court to apply in deciding Plaintiffs' motion is whether moving forward with the case Plaintiffs themselves filed would cause Plaintiffs to suffer a clear case of hardship or inequity. Plaintiffs cannot meet that standard.  Even if the Delaware court decided that it had personal jurisdiction over Aurobindo India and Plaintiffs successfully sought to dismiss this case or transfer it to Delaware, the worst that would happen is the discovery that occurred here could be used in Delaware.  Moreover, a temporary stay would subvert Congress' express mandate for a quick resolution of the patent infringement issues in

Hatch-Waxman cases and impinge on Aurobindo India's rights to the same.  Plaintiffs

filed this lawsuit, and it should proceed.

## BACKGROUND

On October 31, 2007, Aurobindo India sent Plaintiffs a notice ("Paragraph IV

notice") that it had filed an Abbreviated New Drug Application ("ANDA") with the

Food and Drug Administration.[1]  In the Paragraph IV notice, Aurobindo India informed

Plaintiffs that it was seeking permission to sell rosuvastatin calcium tablets in the

United States prior to the expiration of several patents listed in the "Orange Book" in

connection with Plaintiffs' new drug application for rosuvastatin -- namely U.S. Patent

Nos. Re 37,314 ("the '314 patent"), 6,858,618, and 6,316,460 (collectively, "the Orange

Book Patents").  On December 11, 2007, Plaintiffs sued Aurobindo India and Aurobindo

Pharma USA, Inc. ("Aurobindo USA") (collectively, "Defendants") and six other

generic drug manufactures in the U.S. District Court for the District of Delaware.

Plaintiffs' suit against Defendants alleges infringement of the '314 patent under the

Hatch-Waxman Act and under 35 U.S.C. § 271(a).  (D.I. 1 at 10.)  On December 18, 2007,

Plaintiffs filed an identical lawsuit against Defendants in this Court which they claim is

---

[1] Plaintiffs incorrectly state that both Aurobindo India and Aurobindo USA sent the Paragraph IV notice letter. (D.I. 20-2.)  Only Aurobindo India did so. (*See* Defendants' Motion to Dismiss for Lack off Subject Matter Jurisdiction, D.I. 6.)  (Also to be clear, Aurobindo India did not send a Paragraph IV notice to AstraZeneca UK Limited because it was not listed as the holder of NDA No. 021366 or the owner and/or assignee for any of the Orange Book Patents.)

a "protective" suit in case the Delaware action against Aurobindo India is dismissed for lack of personal jurisdiction.  (D.I. 20-2 at 2.)

On January 31, 2008, Aurobindo USA filed a motion to dismiss the Hatch-Waxman claim for lack of subject matter jurisdiction in both jurisdictions.  (D.I. 6.)  In addition, Aurobindo India filed an Answer (D.I. 4) to the Complaint (D.I. 1) in this case and a motion to dismiss for lack of personal jurisdiction in Delaware.[2]  Although Plaintiffs assert that two other Delaware co-defendants consented to jurisdiction in Delaware because they recognized the benefits of "judicial economies" (D.I. 20-2 at 3), the reality is that these codefendants consented to jurisdiction in Delaware as part of other negotiations with Plaintiffs.[3]  Plaintiffs then filed this motion to stay and thereafter attempted to delay this case by asking the Magistrate Judge to extend the deadlines for responding to Defendants' motion to dismiss until after this motion to stay was decided.  The Magistrate declined to do and instead arranged the briefing and return date schedule so that this Court could consider the motions together in an organized manner.  (D.I. 22.)  A Rule 16 conference is scheduled for March 25, 2008 in this case (D.I. at 11), and Aurobindo India recently served written discovery to Plaintiffs.

---

[2] AstraZeneca incorrectly states that Aurobindo USA answered the unserved Complaint.  (D.I. 20-2 at 3.)  As the record indicates, the Answer (D.I. 4) to the Complaint (D.I. 1) was filed only by Aurobindo India.  Aurobindo India also filed a motion to dismiss the § 271(a) claim in this Court.

[3] Based on discussions with Plaintiffs' counsel, Defendants believe that other defendants in Delaware consented to personal jurisdiction as part of a deal to drop the case against their American subsidiaries.

**ARGUMENT**

**POINT I**
**PLAINTIFFS MISAPPLY THE "FIRST-FILED" RULE**

Plaintiffs assert that the "first-filed" rule entitles them to a stay absent extraordinary circumstances. Plaintiffs are wrong. The rule is an equitable rule that does not apply in circumstances such as this one where Plaintiffs themselves created the circumstances leading to the suit being filed in two courts and where Congress has expressly favored prompt resolution of the claims at issue. Moreover, the cases relied upon by Plaintiffs do not support their claims.

**A.     Equity Favors Defendants in this Circumstance**

The first-filed rule states "that 'in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'" *EEOC v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) (quoting *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir. 1941)). The rule is grounded in equitable principles and its primary purpose is judicial economy and the avoidance of conflicting judgments. *EEOC,* 850 F.2d at 977. "Although exceptions to the rule are rare, courts have consistently recognized that the first-filed rule 'is not a rigid or inflexible rule to be mechanically applied.'" *Id.* at 976 (citations omitted). "[F]undamental fairness dictates the need for fashioning a flexible response to the issue of concurrent jurisdiction." *Id.* at 977 (citations and internal quotations omitted).

To that end, common knowledge dictates that the rule is typically applied in circumstances where *different parties* have filed suit against each other in different locations, not where the *same party* attempts to find the best judicial deal by filing in two

- 4 -

places. *See, e.g.*, *EEOC*, 850 F.2d at 976-77 (collecting cases). The traditional basis for the rule simply does not apply in the latter situation, which is the case here.

Plaintiffs assert that they filed a "protective suit" here in addition to their preferred forum in Delaware in order to preserve their right to the automatic 30-month stay preventing the FDA from approving Aurobindo India's ANDA. (D.I. 20-2 at 2.) While Plaintiffs' actions may be a good strategy for obtaining their preferred forum, it is not a relevant consideration for this Court in applying the "first-filed" rule. Plaintiffs didn't need to file in Delaware to obtain the automatic 30-month stay. If Plaintiffs were truly interested in judicial economy and believed that consolidating cases involving other generic manufacturers would achieve that goal, they could have sued every defendant where they knew jurisdiction existed and then sought to consolidate the cases by agreement or through the Judicial Panel on Multidistrict Litigation (JPML). Instead, Plaintiffs went about it the other way: they chose to sue all of the defendants first in Plaintiffs' preferred forum even though they knew that jurisdiction over some of those defendants, including Aurobindo India, was questionable. That move created the extra step of delaying the initiation of the proceedings by requiring resolution of jurisdictional challenges first. The first-filed rule was not created to give Plaintiffs an inherent right to file two separate lawsuits in order to forum shop or to precipitate further delay in resolving cases. As discussed below, Plaintiffs' request to stay ignores that *Aurobindo India* also has important rights under the Hatch-Waxman Act and that public policy favors moving this case forward.

- 5 -

The court in *Aventis Pharma Deutschland GMBH v. Lupin Ltd.*, 403 F. Supp. 2d 484 (E.D. Va. 2005), similarly rejected a Hatch-Waxman plaintiff's attempt to stay a case filed as a "protective measure" on the ground that this was an improper application of the "first filed" rule. As that court stated, plaintiffs "do not explain why or if the statutory framework requires such a 'protective measure.' They point to no case or regulation indicating that 'protective actions' are necessary or encouraged in ANDA cases." *Id.* at 490.[4]  The same applies here.

### B.     The First-Filed Rule Does Not Apply to Hatch-Waxman Cases

The Third Circuit has rejected the first-filed rule in cases where the congressional policy favored prompt resolution of the claims. *EEOC*, 850 F.2d at 978 ("Upholding the University's first-filed suit in this context would undermine the congressional policy favoring prompt resolution of discrimination claims."). In *EEOC*, the Third Circuit held that "the district court did not abuse its discretion by declining to dismiss the second-filed suit." *Id.* at 977.   "Our holding is further supported by two themes emphasized by Congress when it enacted Title VII.  First, Title VII requires the prompt resolution of claims." *Id.* at 978.

---

[4] *Aventis* cites Herbert Schwartz, <u>Patent Law and Practice</u> § 3.V.A. (4th ed. 2003) for the proposition that the first to file rule applies when there are multiple defendants in different forums. *Aventis*, 403 F. Supp. 2d at 489. The Schwartz reference discusses generalities such as the situation pointed out by Defendants where a patentee sues in one forum and an alleged infringer sues in another. *See* Herbert Schwartz, <u>Patent Law and Practice</u> § 3.V.A. (5th ed. 2006). The Schwartz reference does not address the specific instance at issue here and in fact acknowledges that there may be "sound reasons" that make it "unjust" to follow the first to file rule. *Id.*

Congress expressly sought to expedite Hatch-Waxman cases in order to quickly resolve patent infringement claims and facilitate entry of generic pharmaceuticals into the marketplace when appropriate.  21 U.S.C. § 355(c)(3)(C); *Aventis,* 403 F. Supp. 2d at 487 ("Obviously, this process is designed to allow for the court to resolve any claim of infringement the original patent owner may have against the ANDA applicant as quickly as possible, and, indeed, the statute requires that, in these actions, 'each of the parties shall reasonably cooperate in expediting the action.'") (quoting 21 U.S.C. § 355(c)(3)(C)).  Accordingly, the first-filed rule is not applicable to Hatch-Waxman cases. s

### C.    Plaintiffs' Case Law Does Not Support Them

Plaintiffs cite *PDL Biopharma, Inc. v. Sun Pharmaceutical Industries, Ltd.,* No. 07-11709, 2007 WL 2261386  (E.D. Mich. Aug. 6, 2007), as an example of a Hatch-Waxman case where the first-filed rule was applied.  This case is easily distinguishable from the case at bar.  In *PDL*, the defendant had initially contested personal jurisdiction in the District of New Jersey (the first-filed suit), but later consented to personal jurisdiction.  *PDL,* 2007 WL 2261386, at *1.  The possibility that the first-filed lawsuit would be dismissed thus became moot.  Therefore, in that specific instance, "[a]llowing two identical suits to proceed in a parallel manner would clearly be contrary to the

principles of comity and would waste scarce judicial resources."[5] *Id*. at *2. Here, Aurobindo India continues to contest personal jurisdiction in Delaware. At this stage of the proceedings, moving forward in this case would not waste scarce judicial resources. To the extent that this Court expends its judicial resources, those resources would not be wasted because it would allow the parties to proceed with discovery that can be utilized in Delaware if necessary. Therefore, the first-filed rule should not be applied in this case.

Plaintiffs also rely on *Schering Corp. v. Caraco Pharm. Labs., Ltd.*, No. 06-14386, 2007 WL 1648908 (E.D. Mich. June 6, 2007), to support the application of the first-filed rule in Hatch-Waxman cases. In *Schering*, the court granted Schering's motion for a stay

---

[5] Plaintiffs also rely on *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, No. 1:07-CV-993, 2007 WL 4284877 (W.D. Mich. Dec. 3, 2007), in support of the application of the first-filed rule. This case is also easily distinguishable from the case at bar for the same reasons as above. Moreover, the courts in *PDL* and *Adams* also incorrectly interpret the operation of the 45-day window to file the lawsuits. Both courts state that "should a court in Plaintiff's preferred forum of the District of New Jersey find that jurisdiction was not appropriate there, the timing of the ruling could preclude Plaintiff from filing *any* action under the Act." *PDL*, 2007 WL 2261386, at *2 (emphasis in the original); *Adams,* 2007 WL 4284877, at *2 (emphasis in the original). Both courts further state that given the harsh outcome should Plaintiff's preferred forum dismiss the cause of action after the 45-day filing period, a consideration of the "extraordinary circumstances" of the case weighs in favor of the stay. *PDL*, 2007 WL 2261386, at *2; *Adams,* 2007 WL 4284877, at *2. The 45-day window to file a lawsuit under 35 U.S.C. § 271(e)(2) is merely a trigger for the 30-month stay of the approval of an ANDA application, and does not preclude parties from filing § 271(e)(2) lawsuits after the 45-day window has expired. *Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294, 1297 n.5 (11th Cir. 2003) ("The patent holder is, of course, free to sue the applicant for infringement under 35 U.S.C. § 271(e)(2)(A) after the 45 day window expires. The 30-month stay of FDA approval, however, will not be triggered."); *Teva Pharms. USA, Inc., v. Pfizer, Inc.*, 405 F.3d 990, 998 n.2 (Fed. Cir. 2005) ("To be sure, Pfizer's failure to bring suit within the 45-day period specified in section 21 U.S.C. § 355(j)(5)(B)(iii) means that the approval of the ANDA will not be delayed under that section").

because it was "persuaded that the danger of unfair prejudice to Schering is substantial." 2007 WL 1648908, at *3. In particular, the court accepted Schering's contention that moving forward with the case "would cause it to expend a substantial amount of its resources to engage in separate discovery in the two jurisdictions." *Id.* Here, Plaintiffs have conceded that "any discovery taken in the Delaware Action can be utilized in the New Jersey Action," (D.I. 20-2 at 4), so the opposite must also be true. Consequently, there is no unfair prejudice that would befall plaintiffs if this case moves forward to discovery since any discovery taken in this case can be utilized on the Delaware action if necessary.

**POINT II**

**THE CORRECT STANDARD REQUIRES
PLAINTIFFS TO PROVE HARDSHIP OR
INEQUITY AND NO SUCH CIRCUMSTANCES
EXIST IN BEING REQUIRED TO GO FORWARD**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936); *Dentsply Int'l., Inc., v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990) (citing *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir. 1983)).). "[T]he suppliant for a stay **must** make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 at 255 (emphasis added).

Here, Plaintiffs do not come close to making out a clear case of hardship or inequity. Whatever hardships or inequities Plaintiffs may argue are of their own making. Prior to filing the Delaware action, Plaintiffs knew with certainty that personal jurisdiction would exist over Aurobindo India in New Jersey. In spite of that, Plaintiffs decided to file the Delaware action hoping that Aurobindo India would not contest jurisdiction in Delaware. This strategic calculation by Plaintiffs does not constitute hardship or inequity.

Contrary to Plaintiffs' assertion, moving forward with this case, even if under a different schedule than the Delaware action, would be efficient and would not be duplicative. As already noted, any discovery obtained in this action as it moves forward can be used in Delaware (or anywhere else, for that matter). To the extent that Aurobindo USA remains a party to this litigation, some of this discovery will take place in New Jersey where Aurobindo USA's principal place of business is located. Aurobindo India has also committed to cooperating with discovery to the extent it involves other defendants regardless of which court they are in, and there will be sufficient overlap between the discovery periods in Delaware and New Jersey regardless if the case here goes to trial first. Some of the actions in Delaware involve additional patents that are not at issue in this case, which adds to the complexity of those actions and inevitably results in a more protracted litigation than this action. Furthermore, it is not at all clear that the defendants in Delaware are asserting the same specific defenses with respect to the one patent that is at issue in both cases. Thus,

moving forward with this case would simplify the issues vis-à-vis the parties in this case, as opposed to temporarily holding it in abeyance.

A temporary stay would serve no purpose other than to unduly delay the resolution of the alleged patent infringement in connection with Aurobindo India's ANDA application.  As discussed below, it would harm Aurobindo India, whereas moving forward with this case would not prejudice Plaintiffs at all.  Therefore, the Court should deny Plaintiffs' motion for a temporary stay and move this case forward.

### POINT III

### GRANTING A STAY WOULD SUBVERT CONGRESS' EXPRESS MANDATE TO EXPEDITE HATCH-WAXMAN CASES

As discussed above, the Hatch-Waxman Act amended the patent and drug laws "to get generic drugs into the hands of patients at reasonable prices – fast." *In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991).  Congress sought to expedite these cases. Plaintiffs' actions in filing this lawsuit and then seeking a stay therefore contravene the express direction of Congress and good public policy.  *Aventis*, 403 F. Supp.2d at 490-91.

Although Plaintiffs focus on their rights under the Hatch-Waxman Act, *defendant* Aurobindo India also has a right to prompt consideration of its ANDA and paragraph IV certification.  A temporary stay in this case at this stage of the proceedings will harm Aurobindo India.  Aurobindo India has expended substantial resources to expedite the process for the approval of its ANDA.  It is ready to move forward with discovery in this case to obtain an expeditious resolution of the alleged patent infringement in connection with its ANDA application.  Any delays at the behest of Plaintiffs would

inflict serious damage on Aurobindo India's ability to obtain prompt approval of its
ANDA application. *See Schering*, 2007 WL 1648908, at *2 (recognizing that "the longer it
takes to resolve the dispute in this case, the longer the Defendants will be prevented
from producing and potentially profiting from a generic version of [the name-brand
drug]").

This Court already has personal jurisdiction over Aurobindo India and personal
jurisdiction over Aurobindo USA would exist if the Court were to deny defendants'
motion to dismiss for lack of subject matter jurisdiction (D.I. 6). On the other hand, the
Delaware court cannot exercise personal jurisdiction over Aurobindo India until it
decides Aurobindo India's motion to dismiss for lack of personal jurisdiction there. As
Plaintiffs correctly indicate, the parties have begun taking limited jurisdictional
discovery to allow Plaintiffs to prepare a response by April 21, 2008. (D.I. 20-2 at 3-4.)
Any resolution of the personal jurisdiction issue in the Delaware action is months away.

Further, it is not all clear that the Delaware action can proceed anytime soon.
Consistent with their goal to delay resolution of these issues while they reap monopoly
profits, Plaintiffs have suggested a July 2010 trial date in Delaware, over two years
away. Moreover, it is not even certain that the court in Delaware can hold a trial by
then. That court is operating at only 75% capacity, having had a vacancy in one of its
four judgeships for over a year. (See Pardon Decl., Ex. A).[6] Finally, Plaintiffs have

---

[6] All references to "Pardon Decl." are to the Declaration of Edward J. Pardon, Esq.,
submitted concurrently herewith.

made it clear that if the Delaware court rules against them on the personal jurisdiction issue, they want this Court to further stay the proceedings for several more months while Plaintiffs approach the JPMD. (D.I. 20-2 at 4.) Clearly, this Court is the first "court which has possession of the subject" even though the New Jersey action was deliberately filed seven days after the Delaware action under the guise of a "protective" suit.[7]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a temporary stay and move this case forward.

---

[7] This Court should not condone Plaintiffs' dilatory tactics of filing a "protective" suit just to have it stayed. *PDL,* 2007 WL 2261386, at *2 (stating that it cannot condone the routine use of the filing of protective lawsuits even though it had no choice but to apply the first-filed rule under the circumstances of the case).

Dated:  March 7, 2008

Respectfully submitted,

**SAIBER LLC**

/s/ Arnold B. Calmann
Arnold B. Calmann
Jane Jhun
One Gateway Center
13th Floor
Newark, NJ 07102-5311
Tel: 973.622.3333
Fax: 973.622.3349

abc@saiber.com
jj@saiber.com

Of Counsel:

Jeffrey S. Ward
Thomas P. Heneghan
Edward J. Pardon

**MICHAEL BEST & FRIEDRICH LLP**
One South Pinckney Street
P.O. Box 1806
Madison, WI  53701-1806
Tel: 608.257.3501
Fax: 608.283.2275

jsward@michaelbest.com
tpheneghan@michaelbest.com
ejpardon@michaelbest.com


Attorneys for Defendants
Aurobindo Pharma Limited and
Aurobindo Pharma USA, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ASTRAZENECA PHARMACEUTICALS LP, )<br>ASTRAZENECA UK LIMITED,                )<br>IPR PHARMACEUTICALS, INC., and        )<br>SHIONOGI SEIYAKU KABUSHIKI KAISHA, )<br>                                                              )<br>                    Plaintiffs,                          )<br>                                                              )<br>        v.                                                    )<br>                                                              )<br>AUROBINDO PHARMA LIMITED, and    )<br>AUROBINDO PHARMA USA, INC.,         )<br>                                                              )<br>                    Defendants.                        ) | Case No. 07-CV-06020 (MLC)(JJH) |

**DECLARATION OF EDWARD J. PARDON IN SUPPORT OF DEFENDANTS'**
**OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY STAY**

I, Edward J. Pardon, do declare and state as follows:

1.       I am an associate attorney at Michael Best & Friedrich LLP. I am one of the attorneys representing defendants Aurobindo Pharma Limited and Aurobindo Pharma USA, Inc., in the above-referenced case. I submit this declaration in support of the defendants' Opposition to Plaintiffs' Motion for a Temporary Stay, filed herewith.

2.       Attached hereto as Exhibit A is a true and correct copy of an article which I obtained from the following web location:

http://depatentlaw.morrisjames.com/Delaware%20Vacant%20Judgeship--25Jan08.pdf

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 7, 2008.

_____
Edward J. Pardon

**B**
FRIDAY
JAN. 25, 2008

The News Journal
WILMINGTON, DEL.

Updates and latest news:
www.delawareonline.com

# Local&Business

News tips: 324-2377 or newsdesk@delawareonline.com •

# Court moves to break logjam

## Federal district judges will share cases assigned to 'vacant judgeship'

By SEAN O'SULLIVAN
The News Journal

WILMINGTON — U.S. District Court officials acknowledged Thursday that it is likely to be a year or more before a vacancy on the court is filled, forcing them to change procedures to deal with a backlog of stalled civil cases.

The admission came in the form of a joint order signed late Wednesday eliminating the designation of "vacant judgeship" – a place-holder position where some 300 civil cases were moved until a new judge is assigned to the district.

Those cases – along with all new cases – will now be assigned to one of the court's three district judges. Chief District Judge Gregory M. Sleet said the process should be completed in a few days to a week or two at the most. "Not a long period of time," he said.

Sleet said the "vacant judgeship" was only intended as a short-term solution when Judge Kent A. Jordan left in December 2006 to take a position on the U.S. 3rd Circuit Court of Appeals.



Chief District Judge Gregory M. Sleet gave the order Wednesday.

But the seat now has been vacant for more than a year, and "it appears the vacancy will continue for some time," according to the order.

A list of potential nominees to fill the position, headed by U.S. Attorney Colm F. Connolly, was submitted to President Bush in March, but the White House has not yet forwarded a name to Congress.

The change was welcome news for attorneys and clients who feared it could be years before their cases would get to trial.

"I'm thankful to the court," Nathaniel "Binky" Briddell said through his attorney Thursday. Briddell, 58, a poultry industry worker, has been waiting for four years for his claims about overtime to be decided.

Briddell's attorney, Jeffrey K. Martin, said he was thankful as well, but expressed concern about the strain this will put on court resources, with three judges doing the work of four.

*See COURT — B2*

# Court: New judge still a year away, observers say

**FROM PAGE B1**

"We hope for all concerned that the fourth judge will be joining the court soon," he said.

Attorney Thomas S. Neuberger, who had a number of cases assigned to the empty judgeship, said the new policy "is a very positive development."

He praised the judges for accepting the additional burden, but like Martin expressed apprehension about the increased pressure on the court brought about by political inaction on the nomination in Washington.

"Each judge's workload just increased by one-third. So they were 100 percent busy before, now they are 130 percent busy," he said.

Sleet acknowledged there will be a significant increase in the caseload for each of the three district judges. But he wouldn't comment on the delay in filling the position and said the court is not seeking to pressure anyone involved.

"We don't get to play a role in that process," he said, adding the court's actions this week are designed to deal with the situation it now faces. "Clearly we recognized a need to revisit the management and assignment issue."

The burden on the court may be eased if some parties agree to turn to the court's two magistrate judges to take over some cases, he said. In other cases, Sleet said, judges may ask parties for less formal "letter briefs" about disputed issues to try to speed the process toward resolution.

Legal experts say it is doubtful the position will be filled before a new administration takes over in Washington a year from now.

With the nation less than a year away from a presidential election – and a Republican White House and the Democrat-controlled Senate feuding over nominations – political observers say there is little chance of any judicial nominee getting confirmed before the election.

The White House has declined comment.

Professor Paul Light of New York University said that 160 to 200 Bush nominees are stalled in Congress, and any Delaware judicial nominee would be headed to the back of that line.

Nationally, there are 43 vacant federal judgeships, including the one in Delaware, according to the Web site of the federal court's administrative office.

The earliest any nominee is likely to take the bench is after the election, in mid-to-late 2009, according to observers.

*Contact Sean O'Sullivan at 324-2477 or sosullivan@delawareonline.com.*

Arnold B. Calmann (abc@saiber.com)
Jane Jhun  (jj@saiber.com)
**SAIBER LLC**
One Gateway Center
13th Floor
Newark, NJ 07102-5311
Tel: 973.622.3333
Fax: 973.622.3349

<u>Of Counsel:</u>
Jeffrey S. Ward (jsward@michaelbest.com)
Thomas P. Heneghan (tpheneghan@michalbest.com)
Shane A. Brunner (sabrunner@michaelbest.com)
Edward J. Pardon (ejpardon@michaelbest.com)
**MICHAEL BEST & FRIEDRICH LLP**
One South Pinckney Street
P.O. Box 1806
Madison, WI  53701-1806
Tel: 608.257.3501
Fax: 608.283.2275

Attorneys for Defendants
Aurobindo Pharma Limited and
Aurobindo Pharma USA, Inc.

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ASTRAZENECA PHARMACEUTICALS LP,)<br>ASTRAZENECA UK LIMITED,                        )<br>IPR PHARMACEUTICALS, INC., and         )<br>SHIONOGI SEIYAKU KABUSHIKI          )<br>KAISHA,                                                        )<br>                                                                   )<br>                  Plaintiffs,                              )<br>                                                                   )<br>           v.                                                     )<br>                                                                   )<br>AUROBINDO PHARMA LIMITED, and )<br>AUROBINDO PHARMA USA, INC.,        )<br>                                                                   )<br>                  Defendants.                            ) | Case No. 07-CV-06020 (MLC)(JJH)<br><br><br>**CERTIFICATE OF SERVICE** |

**ARNOLD B. CALMANN**, hereby certifies as follows:

1.      I am an attorney-at-law of the State of New Jersey and admitted to practice before the Courts of the State of New Jersey and the United States District Court for the District of New Jersey.

2.      I hereby certify that on this 7th day of March, 2008, I caused the following documents to be served upon all counsel of record via ECF:

- Defendants' Brief In Opposition to Plaintiffs' Motion for Temporary Stay;

- Declaration of Edward J. Pardon in Support of Defendants' Opposition to Plaintiff's Motion for Temporary Stay and attached exhibit; and

- Certificate of Service.

3.      I also hereby certify that on this 7th day of March, 2008, I caused the aforementioned documents to be served via electronic mail and first class mail upon the following:

**Finnegan Henderson Farabow**
**Garrett & Dunner, LLP**
901 New York Avenue, NW
Washington, DC 20001

| | |
|---|---|
| Ford F. Farabow | ford.farabow@finnegan.com |
| York M. Faulkner | york.faulkner@finnegan.com |
| Charles E. Lipsey | charles.lipsey@finnegan.com |

**Finnegan Henderson Farabow**
**Garrett & Dunner, LLP**
55 Cambridge Parkway
Suite 700
Cambridge MA 02142

Mary K. Ferguson, Esq.                    mary.ferguson@finnegan.com

**Fitzpatrick Cella Harper &Scinto**
30 Rockefeller Center
New York, New York 10112

Henry J. Renk                    hrenk@fchs.com

**McCarter & English**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

Andrew Berry                    aberry@mccarter.com
Jonathan M. Short                jshort@mccarter.com
Mark Anania                     manania@mccarter.com

Dated:  March 7, 2008                    _____/s/ Arnold B. Calmann_____
                                          Arnold B. Calmann